IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RUSSELL T. NEAL,
         Plaintiff,

vs.                                                        Case No: 3:06cv17/MCR/EMT

SGT. SLOCOMB, et al.,
         Defendants.

_____/

## REPORT AND RECOMMENDATION

        This cause is before the court on Plaintiff's second amended civil rights complaint filed

pursuant to 42 U.S.C. § 1983 (Doc. 12).  Leave to proceed in forma pauperis has been granted (Doc.

6).

        Because Plaintiff is proceeding in forma pauperis, the court is required to dismiss the case

at any time if it determines that the "action or appeal" is "(i) frivolous or malicious; (ii) fails to state

a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief."    28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section

1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S.

319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only

be ordered when the legal theories are "indisputably meritless," *id.* at 327, 109 S. Ct. at 1833, or

when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504

U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim

are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass,

112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are

construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d

1390, 1393 (11th Cir. 1997).  The complaint may be dismissed only if it appears beyond doubt that

Plaintiff can prove no set of facts that would entitle him to relief.  Brown v. Budget Rent-A-Car Systems, Inc., 119  F.3d  922,  923 (11ᵗʰ Cir. 1997).  Upon review of the complaint, this court concludes that dismissal of Plaintiff's claims is warranted.

Named as Defendants are Charlie Morris, Sheriff of Okaloosa County; Dr. Hart, a doctor at the Okaloosa County Jail (Jail); Officer Bolton, a correctional officer at the Jail; and John/Jane Doe, correctional officers at the Jail during the period May 1, 2003 to January 28, 2004 (Doc. 12 at 1, 2). Plaintiff claims that Defendants deprived him of medical care and used excessive force against him in violation of the Eighth Amendment (*id*. at 8).  As relief, Plaintiff seeks monetary damages (*id*.).

Plaintiff alleges the following facts in support of his claims.  He was incarcerated at the Jail from April 30, 2003 to January 28, 2004 (*id*. at 7).  In August of 2002, prior to his arrival at the Jail, Plaintiff was diagnosed with glaucoma by Dr. Hamilton, an ophthalmologist with the Hamilton Eye Institute in Crestview, Florida (*id*. at 7, 7A, 7D, 7E).  As a result of the condition, Plaintiff had surgery on his left eye, used prescription eye drops in both eyes, and wore prescription eyeglasses (*id*. at 7).  Upon Plaintiff's arrival at the Jail, he advised correctional officers of his medical condition and that he needed surgery on his right eye (*id*. at 7A).  Additionally, Plaintiff complained to Dr. Hart and the nursing staff that he was experiencing pain and loss of vision (*id*. at 7-7A).  In August of 2003, three months after Plaintiff's arrival at the Jail, he was examined by Dr. Hamilton, his ophthalmologist (*id*. at 7A, 7D, 7E).  Plaintiff states he was able to see the eye chart during the examination (*id*. at 7C).  Dr. Hamilton prescribed eye drops and bifocals (*id*. at 7C, 7D, 7E).  Upon Plaintiff's return to the Jail, he did not receive his eye drops for "several days" (*id*. at 7E). Additionally, he was not provided the bifocals, but he was provided three pairs of reading glasses which he stacked on his nose so he could read (*id* at 7C).  Plaintiff also states he was not provided any follow-up appointments with Dr. Hamilton (*id*. at 7).  Plaintiff alleges that by the time he left the Jail on January 28, 2004, his vision had dramatically deteriorated (*id*. at 7D).

In support of Plaintiff's excessive force claim, he alleges that at one point during his first three months at the Jail, Officer Bolton directed a laser targeting device at him (*id*. at 7A).  Plaintiff states that while he was drying off in the shower, he noticed a red dot on him (*id*.).  The red dot moved erratically across his arm and chest, then onto the wall, and back onto him (*id*.).  When Plaintiff looked to see where the dot was coming from, he saw Officer Bolton shining a laser

targeting device on him and laughing (*id*. at 7B).  Officer Bolton redirected the laser to the wall and back onto Plaintiff (*id*.).  Plaintiff later discovered that other correctional officers, identified as "John/Jane Doe" in the complaint, played "laser tag" on the inmates for amusement (*id*.).  At one time, Plaintiff saw four or five red dots on an inmate's face, moving erratically and jumping from person to person and onto the walls (*id*.).  Plaintiff alleges that when he was examined by two ophthalmologists after being transferred from the Jail, the doctors observed scar tissue on the center of Plaintiff's retina in his right eye (the eye that he had not had surgery on) (*id*. at 7B, 7C, 7D).  Plaintiff was prescribed medication to relieve the pressure in that eye (*id*. at 7D).

Initially, Plaintiff's claims against Sheriff Morris should be dismissed, as Plaintiff has failed to state a basis for liability as to this Defendant.  Plaintiff apparently seeks to hold him liable because he is the ultimate supervisor of the remaining Defendants.  It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom

or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege Sheriff Morris personally participated in the alleged unconstitutional conduct, that Sheriff Morris directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so, or that a history of widespread abuse existed that put Sheriff Morris on notice of the need to correct the alleged deprivations, and he failed to do so.  Likewise, Plaintiff does not allege the existence of a custom or policy of the Jail that resulted in deliberate indifference to Plaintiff's constitutional rights. Therefore, his claims against Sheriff Morris should be dismissed.

Additionally, despite having been previously advised of the legal standard for claims concerning inadequate medical treatment (*see* Doc. 11), Plaintiff has failed to state a constitutional claim.  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations.  *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment.  *Id.*

Stating an Eighth Amendment claim for inadequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting

Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  *Id.*

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  Estelle, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see also* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm").  In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 105-06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference."  Estelle, 429 U.S. at 105.  "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").  Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care.  Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[1] A complete denial of readily available treatment for a serious medical condition constitutes

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (internal quotation omitted).

In the instant case, Plaintiff cannot satisfy either the objective or subjective component of the Eighth Amendment standard.  A three-month delay in being examined by a specialist, indeed the ophthalmologist Plaintiff went to prior to his incarceration, was not so deficient as to constitute "an unnecessary and wanton infliction of pain."  Likewise the delay of a few days in receiving the eye drops prescribed by the specialist after the examination does not satisfy the objective standard.  Furthermore, the facts fail to show that Dr. Hart or the correctional officers subjectively knew that the three-month delay in treatment created a serious risk of harm to Plaintiff and that they intentionally delayed the appointment with Dr. Hamilton or the delivery of the eye drops prescribed at the appointment.  As to the failure to provide  Plaintiff's bifocals, Plaintiff concedes that he was provided three pairs of reading glasses.  Although wearing three pairs of glasses is obviously cumbersome, the facts fail to show that this response was so deficient as to constitute an infliction of pain, or that Defendants knew that the substitution of three pairs of reading glasses for bifocals created a serious risk of deterioration of Plaintiff's eyesight.  Finally, with regard to the lack of a follow-up appointment with Dr. Hamilton, the facts fail to show that the deterioration of Plaintiff's eyesight was caused by the lack of a follow-up visit, especially in light of the fact that Plaintiff was being provided the prescribed eye drops and the multiple pairs of glasses.

The facts alleged by Plaintiff also fail to state a claim of excessive force against Officer Bolton and the "John/Jane Doe" correctional officers for directing laser targeting devices at Plaintiff.  When claims involve the use of excessive force the Eighth Amendment inquiry is different.  First, regarding the objective component, a prisoner need not show that such force caused an "extreme deprivation" or "serious" or "significant" pain or injury to establish a cause of action.  Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S. Ct. 995, 999-1000, 117 L. Ed. 2d 156 (1992).  All that is necessary is proof of more than de minimis pain or injury.  *Id.*  Second, the subjective component

requires consideration of "whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 112 (quoting Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986)).   The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors, set out originally in Whitley, 475 U.S. 312, include: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (citations omitted).

As to the objective component in the instant case, although Plaintiff expresses his belief that the scar tissue on his retina observed by two ophthalmologists was caused by a burn from a laser targeting device, he does not allege any facts to support this belief.  He does not allege that a correctional officer ever pointed a laser device at his eye or that a doctor attributed the scar tissue to a burn.  Because the facts alleged by Plaintiff fail to show that he suffered any pain or injury from the correctional officers' playing "laser tag," he cannot state a constitutional violation.

Accordingly, it is respectfully **RECOMMENDED**:

That Plaintiff's complaint be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida, this 11th day of September 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No:  3:06cv17/MCR/EMT